## Case No. 2,771.

### The CITY OF WASHINGTON.

[11 Blatchf. 487.] [1]

Circuit Court, E. D. New York. Feb. 19, 1874. [2]

COLLISION — STEAMER AND PILOT BOAT—LIGHTS—CUSTOM.

1. A pilot-boat, at night, by her flash light, was seen from a steamer at a distance of several miles, and the officer of the steamer saw her movements, and saw that her course was such as would cross the course of the steamer. The pilot-boat came to a position nearly ahead of the steamer, and lowered a boat, with a lantern on board, to take a pilot to the steamer. This was seen from the steamer. The pilot-boat was crossing from starboard to port of the steamer, and kept her course. The pilot-boat showed no mast-head light. The steamer did not stop, but starboarded, and collided with the pilot-boat: *Held*, that the collision was not due to the want of a mast-head light on the pilot-boat.

[See note at end of case.]

2. The steamer was in fault in starboarding, and in not stopping to receive the pilot.

[Cited in The Columbia, 27 Fed. 708.]

[See note at end of case.]

3. It being shown to be the custom, it was not a fault in the pilot-boat to put herself into the path of the steamer, and there lower her yawl, to put a pilot on board of the steamer.

[Cited in The La Champagne, 43 Fed. 447.]

[See note at end of case.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirming Case No. 2,770. Affirmed in The City of Washington, 92 U. S. 31.]

[In admiralty. Libel by Peter R. Baillie and others, owners of the pilot-boat John D. Jones, against the steamship City of Washington, to recover for the loss of the pilot-boat by collision. The district court decreed in favor of the libellants (Case No. 2,770), and the Liverpool, New York & Philadelphia Steamship Company, claimant of the steamship, appeals.]

Townsend Scudder, for libellants.
James W. Gerard, Jr., for claimant.

WOODRUFF, Circuit Judge. The preponderance of the evidence is, I think, clearly in support of the decree made in the court below. The pilot-boat, by her flash light, was seen from the City of Washington at a distance of several miles, and the testimony of the second officer and of the wheelsman of the steamship both show that they saw her movements, and saw that her course was such as would cross the course of the steamship. Other testimony from the pilot-boat shows that the repeated exhibition of the flash light must have apprized those on the steamer of her movement in that direction; and even the master of the steamer must have observed her near approach in that direction, when he saw the letting down of her yawl, to bring a pilot to the steamer, with a lantern on board. From that moment his attention was diverted to watching the approach of the yawl; and, even according to his testimony, the pilot-boat was then nearly ahead. He seems to have trusted to his own supposition, that, so soon as the yawl left her, she would put up her helm and fall off to leeward, (as he thinks she should have done,) and, therefore, paid no attention to her. But she in fact, continued her course, and the weight of the testimony is that she was in the act of crossing the course of the steamer when her yawl left her, if, in truth, she had not crossed it, so as to bring the steamer's port light into view. Under these circumstances, and with the knowledge of the course of the pilot-boat, most decisively established by the testimony of the second officer and wheelsman, and implied in that of the master of the steamer, it is impossible to say that the collision was in any degree due to the want of a mast-head light on the pilot-boat.

It is equally clear, that the collision was due to fault in the navigation of the steamer. If, as the witnesses from the pilot-boat testify, the pilot-boat had crossed the course of the steamer, so as to bring the port light of the latter into view, before the steamer starboarded, then the fault of such starboarding is manifest. If the pilot-boat was only ahead at that moment, still, as her course was to the port of the steamer, such starboarding was improper. In any event, it seems to me that the steamer was in fault, in not slowing, and, if necessary, stopping, at an earlier moment, and before coming into such dangerous proximity to the sailing vessel. Indeed,

upon the proofs, it was the duty of the steamer to stop to receive the pilot, attempting to board her in the night season.

Left to my own unaided judgment, I should have deemed it an improper risk assumed by the pilot-boat, when approaching to place a pilot on board a steamer, to put herself voluntarily and deliberately in the path of the steamer, to there lower her yawl for putting the pilot aboard. It would have seemed to me that taking such a position was unnecessary and greatly dangerous; but, the proof is, without contradiction, that this is the custom, and reasons are given for it which, to the witnesses, seem satisfactory. Doubtless, this custom proceeds upon an assumption that the steamer will stop to receive her pilot. Upon the proofs, as they stand, I am not able to find it a fault in the pilot-boat that she acted in conformity with this custom; and yet, I do not feel quite satisfied that it would not be wiser to take some other position. The libellants must have a decree for their damages found in the court below, with costs.

[NOTE. Claimant appealed to the supreme court. The grounds of the affirmance are thus summarized by Mr. Justice Clifford: "The court here concurs with the circuit court that it is impossible to say that the collision was in any degree due to the want of a mast-head light on the schooner, or to negligence on the part of those in charge of her navigation; on the contrary, it is clear that the steamship is guilty of both charges preferred against her by the libellants. She improperly starboarded her helm after the yawl was launched, and she continued to advance, whereas she should have stopped and backed, if it was necessary to back, to prevent any forward movement." The City of Washington, 92 U. S. 31.]